[Crim. No. 7473.    In Bank.    Jan. 23, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. CLAUDE LEONARD JETER et al., Defendants and Appellants

672

Earl Klein, under appointment by the Supreme Court, for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

PEEK, J.—Defendants Claude Leonard Jeter and Charles Joshua appeal from judgments of conviction of murder and robbery both in the first degree. A motion for a new trial was denied and the penalty as to each defendant was fixed at life imprisonment on the murder convictions. Defendants' purported appeals from the order denying a new trial, which order is not appealable, are dismissed. (Pen. Code, § 1237.)

Defendants, together with James Evans and Mack Burton, were charged with several counts of armed robbery (Pen. Code, § 211) and with the murder of one Zethery Marshall (Pen. Code, § 187). Thereafter the charges against Evans were dismissed, and at the trial he was a witness for the prosecution. The original jury was unable to agree on a verdict and on retrial Burton was acquitted on all charges, while the instant defendants were found guilty of a single count of robbery in addition to murder.

On the afternoon of Thanksgiving Day, November 24, 1960, a group of nine men including the decedent Marshall were engaged in gambling at the apartment of J. B. Stephenson in downtown Los Angeles. The host acted as doorman, admitting only those persons who knocked on the kitchen door and were acceptable to him.

Witnesses for the prosecution testified that at approximately 3:30 p.m. on the day in question the defendants entered Stephenson's apartment through its kitchen door; that defendant Jeter was armed with an automatic pistol, while Joshua had a knife; and that upon entering Jeter shouted: "This is a stickup. Everybody lie on the floor." It appears from the prosecution's evidence that Marshall at first obeyed the order to lie on the floor, but later jumped up, pulled a concealed gun from inside of his belt, and exchanged shots with Jeter. A scuffle ensued, but was terminated when Marshall lost possession of his weapon when hit on the head with Jeter's pistol. At this point Thomas, one of the gamblers, knocked Jeter's weapon out of his hand and picked it up. Jeter retrieved Marshall's gun, and fled with Joshua when Thomas threatened them with the weapon he had taken from Jeter. The robbery count on which defendants were convicted is for the theft of Marshall's gun, which Jeter pawned the following day.

Marshall, who had been wounded during the exchange of shots, later walked away from the apartment, but collapsed in the street and died. The county medical examiner testified that Marshall suffered several fractures of the skull, but that the cause of death was a gunshot wound through the heart.

Evans, who drove the car which defendants used in coming to and leaving the apartment building, testified that on several occasions before the incident in question Joshua had suggested a holdup at Stephenson's apartment, a known "bookie joint," and that he, Jeter, Joshua, and Burton did in fact attempt such a robbery on the date in question. Evans also testified that after the robbery Jeter was carrying a gun which belonged to Marshall.

Defendants each testified in their own behalf, denying the robbery. Jeter stated that on Thanksgiving Day of 1960, Evans drove him to a pool hall near Stephenson's apartment so that he [Jeter] could return a gun to a man named Dennis, who had earlier given him the weapon as security for a debt; that Dennis was not at the pool hall; that he [Jeter] went to Stephenson's apartment in search of the latter and was there told that Dennis would be at the apartment within a few minutes' time. Dennis was not identified nor could he be located. Jeter further testified that while he was waiting for Dennis, he participated in a dice game which was then in progress and lost steadily; that Marshall ran the game as

well as participated in it; that Marshall was drunk;[1] that as the game continued Jeter noticed that Marshall was using an illegal pair of dice; and that he accused Marshall of cheating, demanded his money back, and threatened to call the police. At this point Marshall grabbed him, but he struck back and knocked Marshall away. Marshall then drew a gun from his belt and fired at Jeter; that he in turn drew the weapon he was returning to Dennis and exchanged shots with Marshall; that the parties again scuffled; that he lost his weapon, but managed to pick up Marshall's pistol; and that he [Jeter] then fled the premises because he "... was excited and ... didn't know what to do." When asked why he shot at Marshall, he replied, "Well, he was trying to kill me so I had to defend myself."

Defendant Joshua testified that he went alone to Stephenson's apartment to place a bet on a horse; that while there, he heard an argument between unidentified persons originating from the area where a dice game was being conducted; that he heard some "guy" say, "Now you are sticking us up with these crooked dice here." Joshua testified further that he then heard pistol shots. He could not say who did the shooting as he had "hit the floor," but did state that he saw Marshall pulling something from his belt immediately preceding the first sound of pistol fire. He also testified that he ran away from the apartment when everyone else did.

The trial court instructed the jury, among other things, on the felony-murder doctrine and on self-defense, but refused to give instructions requested by defendants on second degree murder and manslaughter.

■ "It is a settled rule that jury instructions must be responsive to the issues. The issues in a criminal case are determined by the evidence. ... ■ The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. [Citing cases.] That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true." (*People* v. *Carmen*, 36 Cal.2d 768, 772-773 [228 P.2d 281]; see also *People* v. *Carnine*, 41 Cal.2d 384 [260 P.2d 16].)

■ The evidence presented by the prosecution, if believed, was clearly subject to only one interpretation. Thus,

---

[1]The medical examiner confirmed the fact that Marshall was apparently intoxicated during the period immediately preceding his demise.

if the jury believed Marshall was killed by the defendants during the perpetration of robbery, the only verdict which could be returned was that of first degree murder. (*People* v. *Perkins*, 8 Cal.2d 502 [66 P.2d 631]; Pen. Code, § 189.) It is, therefore, evident that if instructions on second degree murder or manslaughter were warranted, they must be grounded upon evidence which was presented by the defendants, or by such evidence together with that of the prosecution.

By its limited instructions the trial court imposed upon the jury with respect to Jeter the burden of accepting either the prosecution's theory that Marshall's death occured during the commission of a robbery, or the defense that Jeter had acted to protect his person. But the jury had other alternatives. If, for instance, it believed Jeter's testimony that he and Marshall first scuffled but did not believe Jeter's further testimony that he fired only after Marshall had drawn and fired, or if it believed that Jeter took advantage of Marshall's allegedly drunken state after entering into the scuffle, it assuredly could not have brought in a verdict of self-defense, nor would it have been required to bring in a verdict of first degree murder. The crime, if any, could have been second degree murder if the jury found that Jeter fired the first shot with malice aforethought but without wilfulness, deliberation, or premeditation (Pen. Code, § 189; *People* v. *Thomas*, 25 Cal.2d 880, 903-904 [156 P.2d 7]), or it could have been manslaughter if the jury found that the shooting was done without malice upon a sudden quarrel or in the heat of passion. (Pen. Code, § 192; *People* v. *Best*, 13 Cal. App.2d 606, 609-610 [57 P.2d 168]; *Stevenson* v. *United States*, 162 U.S. 313, 314-316 [16 S.Ct. 839, 40 L.Ed. 980, 981].)

The Supreme Court in *Stevenson, supra*, stated at page 314 [40 L.Ed. at p. 981]: "It is difficult to think of a case of killing by shooting, where both men were armed and both in readiness to shoot, and when both did shoot, that the question would not arise for the jury to answer, whether the killing was murder or manslaughter, or a pure act of self-defense. The evidence might appear to the court to be simply overwhelming to show that the killing was in fact murder and not manslaughter, or an act performed in self-defense, and yet, so long as there was some evidence relevant to the issue of manslaughter, the credibility and force of such evidence must be for the jury, and cannot be a matter of law for the

decision of the court.'' Such reasoning is equally applicable to the facts of the present case.

Only in the event that defendants were either guilty of murder perpetrated during the commission of a robbery or were completely innocent of the charged or included offenses could we conclude that the instructions as given were proper. (See *People* v. *Lessard,* 58 Cal.2d 447, 452-453 [25 Cal.Rptr. 78, 375 P.2d 46] ; *People* v. *Turville,* 51 Cal.2d 620, 632-633 [335 P.2d 678] ; *People* v. *Sanford,* 33 Cal.2d 590, 595 [203 P.2d 534].) In those cases wherein such limited instructions have been justified the prosecution's evidence tended to prove only that a murder had been committed during the course of a robbery, and the accused denied any connection with the alleged homicide. But in the instant case the fact of the killing is conceded and only the circumstances under which it was committed are in dispute. In such a situation we cannot ignore the jury's right to believe only that portion of defendants' testimony which negates the commission of a robbery or that they acted with wilfulness, deliberation, or premeditation. Accepting the prosecution's testimony in all other respects, the issues of second degree murder and manslaughter are squarely posed, and it was prejudicial error not to instruct thereon.

While it is true that under the evidence presented involving only Joshua's conduct he was either completely innocent of the homicide or was guilty of first degree murder, such a conviction necessarily depended upon a finding by the jury that Jeter had killed Marshall during the commission of a robbery. But the jury's conviction of Jeter may have been for a lesser crime than murder of the first degree had it been properly instructed. Accordingly, Joshua's conviction on the murder count may have been predicated on Jeter's improper conviction and it too must be reversed. (See *People* v. *Davis,* 48 Cal.2d 241, 257-258 [309 P.2d 1].)

No reason appears for a reversal of the conviction for robbery as to either defendant. No claim is made that the evidence is insufficient or that any error occurred as to that count. The fact that we affirm the judgment in this respect does not require, however, that we further hold that the instant homicide occurred in the perpetration of a felony and that first degree murder conviction is required as a matter of law under the felony-murder doctrine. Where the design to commit an independent felony is conceived by an accused only after delivering the fatal blow to his victim, the

doctrine is not applicable. (*People* v. *Carnine, supra,* 41 Cal. 2d 384; *People* v. *Kerr,* 37 Cal.2d 11 [229 P.2d 777].) In the instant case the jury may well have concluded that Jeter's intention to rob Marshall of his pistol materialized only during the scuffle for the gun after the mortal wound was inflicted.

The judgments as to both defendants are affirmed as to the convictions for robbery, and reversed as to the convictions for murder.

Gibson, C. J., Traynor, J., Peters, J., and Tobriner, J., concurred. Schauer, J., concurred in the judgment.

McCOMB, J., Concurring and Dissenting—I would affirm the judgments in their entirety, to wit: finding defendants guilty (a) of robbery and (b) of murder. See the opinion prepared for the District Court of Appeal by Mr. Presiding Justice Shinn in *People* v. *Jeter* (Cal.App.) 31 Cal.Rptr. 197.