[Crim. No. 12155.　Second Dist., Div. Two.　Mar. 16, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT LOUIS MOORE, Defendant and Appellant.

510

Robert Louis Moore, in pro. per., and Charles B. Johnson for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Richard L. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was charged by information with sodomy (violation of Pen. Code, § 286), assault with a deadly weapon (violation of Pen. Code, § 245), and kidnaping (violation of Pen. Code, § 207), all felonies.

The information also charged a prior conviction for rape in Indiana in 1955, which was admitted. Appellant was tried by a jury and found guilty on all three counts. He was sentenced to state prison, sentences to run concurrently.

Appellant contends that the evidence was insufficient as a matter of law to sustain his conviction, and that the court erred in failing to instruct the jury on the defense of alibi.

■ At approximately 9:30 p.m. on Sunday, September 26, 1965, Felix Alvarez and Ken Rowell, both teenagers, were looking at a car on a used-car lot in Monrovia. Appellant approached them and asked whether they wanted a drink. The three then walked two blocks to a store. Appellant purchased a bottle of wine. They drank, and they continued walking.

Appellant asked the boys whether they wanted to go to a girl's house, and they agreed. As they proceeded up an alley, Rowell said he had to go home; Alvarez stated he had to go with Rowell since he was staying at Rowell's house for the night. Appellant thereupon poured the contents of the bottle into the street, broke the bottle, holding the jagged remainder by the top and grabbed Alvarez. Rowell ran off.

Appellant, holding Alvarez, walked him into an alley, ordered him to take his pants down and lie on the ground and committed sodomy upon Alvarez.

When the sodomy was complete, appellant, using the broken bottle as a weapon, forced Alvarez to accompany him to the apartment of Leon James, a friend of appellant. At that apartment Alvarez was asked whether he knew any girls; he said he did and agreed to take the men to some girls' house. Appellant, Alvarez, because he feared for his safety, and James left in the latter's car. Alvarez led them to his own house, ran inside, and called police.

On cross-examination, Alvarez stated he was not sure on which night the above occurred, that he thought it was a week-

night, not a Sunday, but that he had called police immediately on getting home on the night of the offenses.

Rowell and James both testified to their respective connection with the series of events above outlined. Each was uncertain of the date of the occurrences: Rowell stated he thought it was a week-night. However, he stated that after running away from the encounter with appellant, he had immediately summoned police and rode with them in a police car in search of appellant and Alvarez. The completely certain testimony of the police fixed the occurrence on Sunday, September 26. James testified that he believed the events took place on a Sunday night, and recalled giving a statement to police on Monday, September 27.

In addition, a doctor from the Methodist Hospital in Arcadia testified that Alvarez had been brought to the emergency room of the hospital late Sunday or early Monday morning by police officers. Examination at that time showed injuries in the region of the anus including dried blood and cracks in the lining of the anus which could have been caused, in the doctor's opinion, by the insertion of a penis into the victim's rectum.

A witness testified that he was driving down the alley and observed two people on the ground engaged in sexual activity. He was unable to identify the people as to general description or as to sex. He believed the events occurred on a week-night.

Two police officers testified that they received a call on the night of September 26 at 10:24 p.m. Officer Armento testified he went to Alvarez' home at about 11 p.m. that night and took him and his father to the hospital about midnight.

Appellant testified in his own behalf, admitting he met Alvarez on Sunday night, September 26, and partially corroborating the events described by the other witnesses. He denied, however, committing sodomy on Alvarez, threatening him with a broken bottle, or taking him somewhere against his will.

It is trite to say " 'We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence. . . .' " (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) The evidence was clearly sufficient to support the jury's verdict finding appellant guilty of sodomy (see *People* v. *Babb,* 103 Cal.App.2d 326, 330 [229 P.2d 843]); of assault with a deadly weapon (see *People* v. *Corson,* 221 Cal.App.2d 579, 582 [34 Cal.Rptr. 584]); and of kidnaping (see *People* v. *Oliver,* 55 Cal.2d 761, 765 [12 Cal.Rptr. 865, 361 P.2d 593].)

Appellant argues that because of the uncertainties pointed out in the testimony as to the date of the occurrence of the offenses charged, the jury should have been instructed on the defense of alibi. Appellant asserts that if the jury found the crimes occurred *after* Sunday, September 26, 1965, appellant could not have committed them since he was arrested for these same offenses on Monday, September 27, and has been in custody since that date.

A defendant is, of course, entitled to instructions on any theory of the case for which there is substantial support in the evidence, irrespective of its credibility. (*People* v. *Jeter*, 60 Cal.2d 671, 674 [36 Cal.Rptr. 323, 388 P.2d 355]; *People* v. *Carmen*, 36 Cal.2d 768, 772-773 [228 P.2d 281]; *People* v. *Smith*, *ante*, p. 395 [57 Cal.Rptr. 508] [filed March 13, 1967].) To warrant such instructions, however, there must be *some* evidence, however "incredible" (*People* v. *Jeter*, *supra*) to support a defendant's theory.

Appellant himself testified that he was with Alvarez on the night of September 26, the date charged in the information. This would obviate the propriety of an alibi instruction, since "An alibi consists of evidence that the defendant was not at the scene of the crime when it was committed and did not otherwise participate in its commission." (*People* v. *Gilbert*, 63 Cal.2d 690, 710 [47 Cal.Rptr. 909, 408 P.2d 365].) Not only did appellant fail to offer any evidence of his absence from the scene of the crime on Sunday night, but he affirmatively denied having told the police on September 28 that on September 26 he was in Pasadena between 7 and 11 p.m.

In light of appellant's admission of presence at the scene of the crimes on the date charged, and the complete absence of any evidence of his whereabouts at any time prior to this date, the trial court properly refused an alibi instruction under any plausible theory of the evidence before the jury. (See *People* v. *Collins*, 217 Cal.App.2d 310, 314 [31 Cal.Rptr. 587].) The evidentiary discrepancies as to day and date went, rather to the credibility of the witnesses and the possible presence of reasonable doubt of appellant's guilt in the minds of the jurors. The jury was properly and fully instructed on these matters.

Although appellant does not raise this point, the trial court's imposition of concurrent sentences on all three counts constituted double punishment within the meaning of Penal

514

Code, section 654. (*Neal* v. *State of California,* 55 Cal.2d 11, 18-19 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *McFarland,* 58 Cal.2d 748, 760-763 [26 Cal.Rptr. 473, 376 P.2d 449]; *In re Wright,* 65 Cal.2d 650, 653 et seq. [56 Cal.Rptr. 110, 422 P.2d 998].)

In *People* v. *Ford,* 65 Cal.2d 41, 48-49 [52 Cal.Rptr. 228, 416 P.2d 132], it is said that a determination must be made whether the multiple offenses committed by a defendant were "incident to one objective," or divisible. (*Ford, supra,* at page 48.)

In the instant case, the evidence would support a finding of assault as incident to the commission of sodomy, and assault again as incident to two several kidnaps; the first in taking Alvarez by force and fear into an alley prior to the act of sodomy; the second, in leading Alvarez to James' apartment and taking him in a car in search of girls *after* the sodomy attack. The first kidnap, and the assault by which it was effected, was incidental to the sodomy. The second was a separate act, albeit close in time and circumstances, for a purpose different from the commission of sodomy, to wit: to get girls.

The assault and first kidnap, however, were incident to the one objective of the sodomy and the second assault was indivisible from the second kidnap. Appellant could not, therefore, under *Wright, supra,* be punished separately for assault. He could be punished for both sodomy and the second kidnap, as these were severable crimes.

▌ In *McFarland, supra,* at page 763, the court held that: "The appropriate procedure [on appeal] . . . is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned." Assault with a deadly weapon imposes a lesser sentence than either sodomy or kidnap. (Compare Penal Code, section 245 with sections 286 and 671 as to sodomy, and sections 207 and 208 as to kidnap.)

The judgment insofar as it imposes sentence for assault with a deadly weapon is set aside. (*Wright, supra,* page 657.) In all other respects, the judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 10, 1967.