38 Cal.Rptr.3d 624 (2006)
37 Cal.4th 967
127 P.3d 40
The PEOPLE, Plaintiff and Respondent,
v.
Javier O. SALAS et al., Defendants and Appellants.
No. S126773.
Supreme Court of California
February 6, 2006.
*625 Douglas G. Benedon, under appointment by the Supreme Court, Benedon & Serlin and Gerald Serlin, Woodland Hills, for Defendant and Appellant Javier O. Salas.
Neil Rosenbaum, under appointment by the Supreme Court, San Francisco, for Defendant and Appellant Stephen C. Patrick.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan Sullivan Pithey, Thien Huong Tran, Victoria B. Wilson, Donald E. De Nicola and Lance E. Winters, Deputy Attorneys General, for Plaintiff and Respondent.
Steve Cooley, District Attorney (Los Angeles), Curt Livesay, Chief Deputy District Attorney, Peter Bozanich, Assistant District Attorney, William Woods and Richard A. Lowenstein, Deputy District Attorneys, as Amicus Curiae on behalf of Plaintiff and Respondent.
*626 KENNARD, J.
Corporations Code section 25110 prohibits the sale of unregistered securities.[1] Violation of this prohibition is a crime, punishable by incarceration for up to three years and a fine up to $1 million. (§ 25540, subd. (a).) But not all securities must be registered. There are many grounds of exemption from the registration requirement, and sale of an unregistered but exempt security is not a crime.
Here, defendants Javier O. Salas and Stephen Patrick, charged with selling unregistered securities, claimed they believed in good faith that the securities they sold were exempt from registration. The trial court instructed the jury that this good faith belief was irrelevant to their criminal culpability, and defendants were convicted. The Court of Appeal, however, held that guilty knowledgemeaning either knowledge of the security's nonexempt status or criminal negligence in failing to determine its statusis an element of the crime of selling an unregistered security.[2] It concluded that the trial court erred in failing to so instruct the jury, and that the error was harmless as to defendant Salas but prejudicial as to defendant Patrick.
Like the Court of Appeal, we hold that a seller who believes reasonably and in good faith that a security is exempt is not guilty of the crime of unlawful sale of an unregistered security. As in other similar cases, the severity of the penalties attached to this crime persuade us that the Legislature did not mean to impose criminal liability on defendants who lacked guilty knowledge of facts essential to make the conduct criminal.
Unlike the Court of Appeal, however, we hold that in this context guilty knowledge is not an element of the crime. Rather, a defendant's reasonable good faith belief that a security is exempt from registration is an affirmative defense on which the defense bears the initial burden of proof. This is consistent with the Legislature's treatment of the status of the securities as exempt or nonexempt. In a prosecution for unlawful sale of an unregistered security, the prosecutor is not required to prove, as an element of the offense, that the security was not exempt from registration. Rather, exemption from registration is an affirmative defense on which the defense bears the initial burden of proof. (§ 25163.) It is reasonable to infer that the Legislature intended for the defendant's knowledge of the security's exemption status to be treated in the same manner, as an affirmative defense rather than an element of the crime.
Because good faith belief in a security's exempt status is an affirmative defense, the trial court must instruct the jury about it only when the defense has presented evidence sufficient to raise a reasonable doubt that the defendant knew, or was criminally negligent in failing to know, *627 that the security was not exempt. Here, defendant Salas presented such evidence, and therefore the trial court erred in not instructing the jury on the affirmative defense of good faith as to Salas. But because there was also overwhelming evidence of his guilty knowledge, we conclude that the error was nonprejudicial. As to defendant Patrick, it is unclear whether he presented sufficient evidence of good faith to entitle him to a jury instruction on the affirmative defense. Because the Court of Appeal failed to consider whether Patrick's showing was sufficient to entitle him to an instruction on the affirmative defense, and because the parties did not address that issue here, we remand the matter to it for further proceedings.

I. FACTS AND PROCEEDINGS
In 1990, defendant Salas formed American Joint Ownership Interests, Inc. (AJOI) to acquire properties for development. He was its president, secretary, treasurer, and sole stockholder. Acting on behalf of AJOI, Salas created a number of partnerships to purchase the properties. Defendant Rick Berry (who did not appeal his conviction), and defendant Patrick assisted Salas in procuring investors for partnership interests.
Salas, Berry, and Patrick telephoned numerous persons to urge them to invest in partnership interests in 201 Boylston Street Associates, an entity formed to acquire the property at that address. In almost all instances, they had no acquaintance with the person called. They knew little or nothing of the investor's economic circumstances, but may have taken some of the names from a list of persons furnished by a promoter of another real estate venture. In 1995, however, defendant Berry resigned as sales manager and sent investors a letter advising them of improprieties and fraudulent activities in connection with AJOI investments. AJOI went into receivership in 1997. Salas, Berry, and Patrick were charged with selling unregistered securities in violation of section 25110 and selling securities by misrepresentation or omission of a material fact in violation of section 25401.
At the onset of trial, the parties stipulated that the AJOI partnership interests were securities under section 25110 that had not been registered with the Department of Corporations. Defendants claimed, however, that the securities were exempt from registration under section 25102, which provides that registration is not required if the sales "are not made to more than 35 persons" (id., subd. (f)(1)) and all purchasers either had a preexisting business relationship with the issuer or "could be reasonably assumed to have the capacity to protect their own interests in connection with the transaction" (id., subd. (f)(2)).[3]
At trial, Department of Corporations Examiner Michelle Tse testified that the bank records of 201 Boylston Street Associates showed that 48 people had invested *628 in that partnership. Defendant Salas testified that he was aware that he had to limit the number of investors to 35 in order to avoid the registration requirement, and claimed that he did so. Tse's figures, he said, were incorrect, and included people who had invested in other partnerships or rescinded their investments and received refunds.
Salas also claimed that he or other corporate officers had preexisting relationships with all investors, because John Torosian and others supplied lists of persons who were interested in investing in real estate ventures, and AJOI used those lists in contacting potential investors. Torosian, however, was not an officer or otherwise associated with AJOI.
Although Patrick had the title of vice-president, he and Salas both testified that Patrick was a salesman with no managerial authority. When asked if he knew the investments were securities, Patrick replied: "I had no idea it was a security. I thought these were totally exempt." (Italics added.) There is no other evidence whether Patrick believed in good faith that the securities were exempt from registration.
The trial court instructed the jury that a security is exempt from registration if sold to no more than 35 persons, all of whom either have a preexisting personal or business relationship with the offeror or "are sophisticated investors by virtue of their business and financial experience or the business and financial experience of their financial advisors." It further instructed that "evidence that a defendant ... acted in good faith is not a defense." It did not instruct that to commit the crime of selling an unregistered security, a defendant must know, or be criminally negligent in not knowing, that the security should have been registered.
The jury found all defendants guilty of selling an unregistered security in violation of section 25110. Defendant Berry was also convicted of selling securities by means of misrepresentation or omission of a material fact in violation of section 25401. The jury did not reach a verdict as to whether Salas or Patrick violated section 25401 by selling securities by misrepresentation or omission.
The trial court sentenced defendant Salas to a prison term of three years, to be served in the Department of Corrections' Los Angeles restitution center.[4] It sentenced defendant Patrick to 16 months in state prison, suspending execution of sentence and placing him on probation on condition that he serve one year in county jail. Defendants Salas and Patrick appealed.
On appeal, defendants argued that the trial court erred in not instructing the jury that they could be found guilty of violating section 25110 only if they knew that the security should have been registered or were negligent in failing to know it. The Court of Appeal agreed, reasoning that section 25110 describes a general intent crime in which scienter (knowledge or criminal negligence) is an element of the crime. It held the trial court's failure to instruct on scienter was harmless as to defendant Salas, who managed the investment scheme and should have verified that the number of investors did not exceed 35, as required by statute. As to defendant Patrick, however, the Court of Appeal held the error to be prejudicial because Patrick *629 was a salesman who had no management authority and did not know how many investors were involved.
The Court of Appeal's holding that a violation of section 25110 requires scienter conflicts with an earlier decision of the same district in People v. Corey (1995) 35 Cal.App.4th 717, 41 Cal.Rptr.2d 540 (Corey). We granted the Attorney General's petition for review to resolve the conflict.

II. GUILTY KNOWLEDGE UNDER SECTION 25110
Section 25110 states simply: "It is unlawful for any person to offer or sell in this state any security in an issuer transaction ... unless such sale has been qualified [i.e., registered] ... or unless such security or transaction is exempted or not subject to qualification...." Section 25540, subdivision (a) provides: "[A]ny person who willfully violates any provision of this division [including section 25110] ... shall upon conviction be fined not more than one million dollars ($1,000,000), or imprisoned in the state prison, or in a county jail ... or be punished by both that fine and imprisonment."[5] (Italics added.)
In the Court of Appeal, the Attorney General argued that section 25110 describes a strict liability offense. In this court, however, all parties agree that a violation of section 25110 is a general intent crime. The classification of section 25110 as a general intent crime, however, does not answer the question whether, as the Court of Appeal held, a violation of section 25110 requires that a defendant either know that a security is not exempt from registration or be criminally negligent in not knowing.
Depending upon the crime, a requirement of guilty knowledge may mean that defendants are innocent unless they know the facts making their conduct criminal. (See, e.g., People v. Garcia (2001) 25 Cal.4th 744, 752, 107 Cal.Rptr.2d 355, 23 P.3d 590.) In other cases, it is sufficient that the defendants either know those facts or were criminally negligent in failing to know them. (See Pen.Code, § 20 ["In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence"]; People v. Valdez, supra, 27 Cal.4th 778, 118 Cal.Rptr.2d 3, 42 P.3d 511; People v. Linwood (2003) 105 Cal.App.4th 59, 71-72, 129 Cal.Rptr.2d 73.) Defendants here do not argue that a violation of section 25110 requires that the seller actually knew that the security he sold should have been registered; however, they contend that criminal liability requires that a seller of securities either knew the security was not exempt from registration or was criminally negligent in failing to know. The Attorney General, on the other hand, argues that a seller is guilty if he "willfully"  that is, intentionally  sells an unregistered security, without regard to whether the seller knew or should have known that the security should have been registered.
We addressed a similar issue in 1995 in People v. Simon (1995) 9 Cal.4th 493, 37 Cal.Rptr.2d 278, 886 P.2d 1271 (Simon). The defendant there was convicted of violating section 25401, which prohibits the purchase or sale of securities "by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made *630 ... not misleading." Simon held that "knowledge of the falsity or misleading nature of a statement or of the materiality of an omission, or criminal negligence in failing to investigate and discover them, are elements of the criminal offense described in section 25401." (Simon, supra, 9 Cal.4th at p. 522, 37 Cal.Rptr.2d 278, 886 P.2d 1271.)
Simon set out several reasons for that conclusion. First, it reasoned that because section 25540, which states the penalty for a violation of section 25401, requires a "willful" violation, section 25401 is a general intent crime, not one of strict liability. (Simon, supra, 9 Cal.4th at p. 507, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) Simon noted that general intent crimes ordinarily require mens rea or guilty knowledge. (Id. at p. 519, 37 Cal.Rptr.2d 278, 886 P.2d 1271; see Pen.Code, § 20 ["In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence"].) After observing that criminal liability may be imposed despite a lack of guilty knowledge "where the purpose is to protect public health and safety and the penalties are relatively light" (Simon, supra, 9 Cal.4th at p. 521, 37 Cal.Rptr.2d 278, 886 P.2d 1271, citing People v. Vogel (1956) 46 Cal.2d 798, 801, fn. 2, 299 P.2d 850), Simon pointed out that section 25401 does "not involve conduct which threatens the public health or safety" (9 Cal.4th at p. 521, 37 Cal.Rptr.2d 278, 886 P.2d 1271), and that the punishment for a violation of that statute is not a light one (ibid).[6]
Next, Simon asserted that section 25401 was based on section 12(2) of the federal Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.), which contains an express requirement of guilty knowledge, and that section 25540 was modeled after section 32(a) of that act, which some, but not all, federal courts have construed as requiring guilty knowledge. (Simon, supra, 9 Cal.4th at pp. 509-512, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) Simon noted also that section 10(b)(5) of the federal Securities Exchange Act of 1934, which prohibits a "manipulative or deceptive device" in connection with a sale, was construed by the United States Supreme Court as requiring guilty knowledge. (Simon, supra, 9 Cal.4th at p. 512, 37 Cal.Rptr.2d 278, 886 P.2d 1271, citing Ernst & Ernst v. Hochfelder, (1976) 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668.) And Simon observed that former California Corporations Commissioner Robert Volk and Professor Harold Marsh, described by Simon as having "major responsibility" for drafting the state Corporate Securities Law of 1968, had asserted: "[S]ection 25540 was intended to impose criminal liability only for an intentional misstatement." (Simon, supra, 9 Cal.4th at p. 513, 37 Cal.Rptr.2d 278, 886 P.2d 1271, discussing 1 Marsh & Volk, Practice Under the Cal. Securities Laws (rev. ed.1994) § 1413[1], p. 14-79.)
Simon further observed that section 25501, which provides a civil remedy against a defendant who violates section 25401, states that there is no liability if "the defendant exercised reasonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission." Simon concluded that it would be incongruous, and possibly unconstitutional, to impose criminal punishment  presumably a more serious sanction than civil liability  without guilty *631 knowledge when civil liability required guilty knowledge. (Simon, supra, 9 Cal.4th at pp. 516-518, 522, 37 Cal.Rptr.2d 278, 886 P.2d 1271.)
Finally, Simon invoked the rule of lenity: "`The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.'" (Simon, supra, 9 Cal.4th at pp. 517-518, 37 Cal.Rptr.2d 278, 886 P.2d 1271, quoting In re Tartar (1959) 52 Cal.2d 250, 257, 339 P.2d 553.)
The Court of Appeal in Corey, supra, 35 Cal.App.4th 717, 41 Cal.Rptr.2d 540, asserted that some of the reasons we put forward in Simon, supra, 9 Cal.4th 493, 37 Cal.Rptr.2d 278, 886 P.2d 1271, to support a requirement for guilty knowledge in section 25401 (fraudulent sale of securities) do not apply to the sale of unregistered securities in violation of section 25110. The Attorney General advances the same arguments here.
First, the Attorney General points out that in Simon, supra, 9 Cal.4th at pages 516-518, 37 Cal.Rptr.2d 278, 886 P.2d 1271, this court relied on the express requirement of guilty knowledge in section 25501, which permits a civil cause of action against a seller who makes misleading statements in the sale of a security, as one ground for requiring guilty knowledge for criminal liability. In an attempt to distinguish Simon, the Court of Appeal in Corey noted that the Corporate Securities Law of 1968 does not expressly require guilty knowledge in a civil action against a seller of unregistered securities. (Corey, supra, 35 Cal.App.4th at pp. 728-729, 41 Cal. Rptr.2d 540.)
Second, Corey, supra, 35 Cal.App.4th at page 729, 41 Cal.Rptr.2d 540, observed that in Simon we stated that Marsh and Volk, who were involved in drafting the Corporate Securities Law of 1968 (see ante, 38 Cal.Rptr.3d at p. 630, 127 P.3d at p. 45), said that only intentional misstatements in the sale of securities incur criminal liability. (See Simon, supra, 9 Cal.4th at pp. 513-514, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) In contrast, Corey notes, Marsh and Volk assert that the sale of an unregistered security "`is considered a strict liability offense.'" (Corey, supra, 35 Cal.App.4th at p. 729, 41 Cal.Rptr.2d 540; quoting 1 Marsh & Volk, Practice Under the Cal. Securities Laws, supra, § 14.13[1], p. 14-101.)
The Court of Appeal in Corey asserted a third ground for distinguishing Simon, supra, 9 Cal.4th 493, 37 Cal.Rptr.2d 278, 886 P.2d 1271, but that ground is not valid. It asserted that the magnitude of potential criminal penalties for selling an unregistered security in violation of section 25110, which Corey described as carrying a fine of $1 million and a one-year prison term, was much less than the maximum five years' imprisonment for making misleading statements in the sale of a security. (Corey, supra, 35 Cal.App.4th at p. 729, 41 Cal.Rptr.2d 540.) But Corey was wrong in its description of the maximum penalty for sale of an unregistered security; it is three years' imprisonment, not one year. (See Pen.Code, § 18.) Moreover, even a one-year felony penalty, let alone a $1 million fine, would argue strongly for a guilty knowledge requirement. (See People v. Coria (1999) 21 Cal.4th 868, 877, 89 Cal. Rptr.2d 650, 985 P.2d 970.)
In short, two of the five reasons we gave in Simon, supra, 9 Cal.4th 493, 37 Cal. Rptr.2d 278, 886 P.2d 1271, for requiring guilty knowledge for a violation of section 25501 (sale by misrepresentation or omission) are unique to that section and cannot be invoked to require guilty knowledge for the sale of an unregistered security in violation of section 25110. But the core *632 reason for Simon's conclusion to require guilty knowledge is the principle that mens rea generally attaches to criminal offenses except for those that involve public health or safety and impose relatively light penalties. That principle applies here because defendants were charged with crimes that do not relate to public health and safety and impose relatively severe punishment. (See Staples v. United States (1994) 511 U.S. 600, 618-619, 114 S.Ct. 1793, 128 L.Ed.2d 608; In re Jorge M. (2000) 23 Cal.4th 866, 872, 98 Cal.Rptr.2d 466, 4 P.3d 297; People v. Vogel, supra, 46 Cal.2d at p. 801, 299 P.2d 850.) We therefore reject the Attorney General's contention that our decision in Simon should be distinguished from this case; the same principles should apply whether a defendant is charged with selling an unregistered security, as occurred here, or with making misleading statements or omissions in selling a security, as in Simon.
The Attorney General also challenges Simon's analysis of the legislative history of the statutes it construed. He claims Simon was mistaken when it said that section 25540, which prescribes the punishment for violations of the Corporate Securities Law of 1968, was modeled on section 32a of the federal Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.). The wording of section 25540, he asserts, more closely resembles section 409, subdivision (a), of the American Law Institute's proposed Uniform Securities Act, and the commentary to that section states that, by requiring a "willful" violation, the statute requires only that the person act intentionally, in the sense that he was aware of what he was doing.
The Attorney General also points out that former section 26104, the predecessor to current section 25110, prohibited "knowingly" selling an unauthorized security. (Stats.1917, ch. 532, § 14.) The Legislature's omission of the term "knowingly" in section 25540, he argues, suggests that it did not intend to require actual knowledge for a violation. Simon, supra, 9 Cal.4th 493, 37 Cal.Rptr.2d 278, 886 P.2d 1271, itself noted that the word "knowingly" does not appear in section 25540, but said that the absence of that word was not in itself sufficient to compel a conclusion that a criminal statute does not require guilty knowledge even though that statute imposes severe penalties. (Simon, at pp. 521-522, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) In Simon, we specifically disapproved People v. Johnson (1989) 213 Cal.App.3d 1369, 262 Cal.Rptr. 366, in which the Court of Appeal had incorrectly asserted that "[t]he omission of `knowingly' from a penal statute indicates that guilty knowledge (scienter) is not an element of the offense." (Simon, supra, 9 Cal.4th at p. 522, fn. 18, 37 Cal.Rptr.2d 278, 886 P.2d 1271.)
The Attorney General's arguments finding fault with this court's discussion of the legislative history of the Corporate Securities Law of 1968 in Simon, supra, 9 Cal.4th 493, 37 Cal.Rptr.2d 278, 886 P.2d 1271, do not offer grounds for distinguishing that case here; instead, they suggest that Simon's analysis was wrong and that we should overrule that case. We are not persuaded. In Simon, we invited the Legislature to clarify which criminal violations of section 25540, enacted as part of the Corporate Securities Law of 1968  which includes both sales by misrepresentation or omission (the issue in Simon) and sales of an unregistered security (the issue here)  "are strict liability offenses and what mental states are elements of those which require scienter." (Simon, supra, 9 Cal.4th at p. 510, fn. 13, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) But although the Legislature has frequently amended the Corporate Securities Law of 1968 in the 10 years since we decided Simon, it has not abrogated Simon or clarified the mens rea *633 of crimes punishable under section 25540. We infer legislative acquiescence in Simon's conclusion that a conviction for unlawful sale of securities that entails a relatively severe punishment requires guilty knowledge. (See Colmenares v. Braemar Country Club (2003) 29 Cal.4th 1019, 1030, 130 Cal.Rptr.2d 662, 63 P.3d 220; Fukuda v. City of Angels (1999) 20 Cal.4th 805, 819, 85 Cal.Rptr.2d 696, 977 P.2d 693; People v. Bouzas (1991) 53 Cal.3d 467, 475, 279 Cal.Rptr. 847, 807 P.2d 1076.)
Moreover, during this 10-year period we have frequently relied on Simon to require guilty knowledge for violation of a number of criminal statutes even though the statutes did not expressly require that the defendant act "knowingly."
For instance, in People v. Hagen (1998) 19 Cal.4th 652, 80 Cal.Rptr.2d 24, 967 P.2d 563, we construed the term "willfully" in Revenue and Taxation Code former section 19405, subdivision (a)(1), which made it a felony to "willfully make and subscribe a[tax] return ... that he or she does not believe to be true and correct as to every material matter." (Rev. & Tax.Code, former § 19405, as amended by Stats.1993, ch. 826, § 6, pp. 4462-4463, repealed by Stats.1994, ch. 1243, § 58.) We held that a violation of this statute required more than "volitional action"; it required "`bad faith or evil intent.'" (People v. Hagen, supra, at pp. 663, 665, 80 Cal.Rptr.2d 24, 967 P.2d 563.)
In People v. Coria, supra, 21 Cal.4th 868, 89 Cal.Rptr.2d 650, 985 P.2d 970, we held that a conviction for manufacturing methamphetamine (Health & Saf.Code, § 11379.6, subd. (a)) required proof that the defendant knew the substance being manufactured was methamphetamine. (People v. Coria, supra, 21 Cal.4th at p. 874, 89 Cal.Rptr.2d 650, 985 P.2d 970.) Our decision relied on our holding in Simon, supra, 9 Cal.4th at page 519, 37 Cal.Rptr.2d 278, 886 P.2d 1271, that mens rea is the rule rather than the exception, particularly for crimes with severe penalties. (People v. Coria, supra, 21 Cal.4th at pp. 876-878, 89 Cal.Rptr.2d 650, 985 P.2d 970.)
People v. Rubalcava (2000) 23 Cal.4th 322, 96 Cal.Rptr.2d 735, 1 P.3d 52, said that because the crime of carrying a concealed dirk or dagger (Pen.Code, § 12020, subd. (a)) "criminalizes `"traditionally lawful conduct,"' we construe the statute to contain a `knowledge' element. [Citation.] Thus, to commit the offense, a defendant must still have the requisite guilty mind: that is, the defendant must knowingly and intentionally carry concealed upon his or her person an instrument `that is capable of ready use as a stabbing weapon.' [Citation.] A defendant who does not know that he is carrying the weapon or that the concealed instrument may be used as a stabbing weapon is therefore not guilty of violating section 12020." (People v. Rubalcava, supra, 23 Cal.4th at pp. 331-332, 96 Cal.Rptr.2d 735, 1 P.3d 52.)
In re Jorge M., supra, 23 Cal.4th 866, 98 Cal.Rptr.2d 466, 4 P.3d 297, held that in a prosecution for possession of an assault weapon in violation of Penal Code section 12280, subdivision (b), "the People bear the burden of proving the defendant knew or reasonably should have known the firearm possessed the characteristics bringing it within the [Assault Weapons Control Act]." (In re Jorge M., supra, 23 Cal.4th at p. 887, 98 Cal.Rptr.2d 466, 4 P.3d 297.)
People v. Garcia, supra, 25 Cal.4th 744, 107 Cal.Rptr.2d 355, 23 P.3d 590, held that because the crime of willful failure to register as a sex offender under Penal Code section 290 involved a failure to act, a defendant could not be found guilty unless the defendant actually knew of his duty to register. (Garcia, at p. 752, 107 Cal. Rptr.2d 355, 23 P.3d 590.) People v. Barker *634 (2004) 34 Cal.4th 345, 18 Cal.Rptr.3d 260, 96 P.3d 507 confirmed that a violation of Penal Code section 290 required guilty knowledge, but held that the defendant, aware of his duty to register, could not defend on the ground that he forgot the critical date of registration.
In view of the repeated judicial affirmation of Simon, supra, 9 Cal.4th 493, 37 Cal.Rptr.2d 278, 886 P.2d 1271, in this line of precedent, we reject the Attorney General's suggestion that we overrule Simon, and instead, following the reasoning in that decision, hold that a defendant is not guilty of the crime of selling an unregistered security in violation of section 25110 if there is a reasonable doubt whether the defendant knew the security was not exempt from regulation or was criminally negligent in failing to know that the security was not exempt.[7]

III. LACK OF GUILTY KNOWLEDGE AS AN AFFIRMATIVE DEFENSE
According to the Attorney General, including a guilty knowledge requirement in section 25110's prohibition on the sale of unregistered securities will seriously hamper enforcement of that provision. He points out that there are many grounds for exempting a security from registration. (See §§ 25102 [listing 17 grounds for exemption], 25103 [listing five grounds], 25104 [eight grounds], 25105 [authorizing commissioner by rule to establish additional grounds for exemption].) The Attorney General contends that it would be virtually impossible for the prosecution to prove as part of its case-in-chief that a defendant did not believe the security exempt under any of these grounds.
The Legislature anticipated the problems caused by the multiplicity of exemptions. Section 25163 provides: "In any proceeding under this law, the burden of proving an exemption or an exception from a definition is upon the person claiming it." As this court noted in Simon, however, "Because an exemption defense is not collateral to the defendant's guilt of a charge of selling unqualified securities, ... a defendant's burden is only to raise a reasonable doubt that the defendant sold nonexempt securities." (Simon, supra, 9 Cal.4th 493, 501, 37 Cal.Rptr.2d 278, 886 P.2d 1271; see People v. Mower (2002) 28 Cal.4th 457, 483, 122 Cal.Rptr.2d 326, 49 P.3d 1067.) The Legislature having determined that a defendant who asserts a security is actually exempt raises an affirmative defense and has the burden of presenting evidence raising a reasonable doubt, it is reasonable that a defendant asserting a good faith belief that a security is exempt should bear the same burden.
Under the so-called rule of convenience and necessity, "`the burden of proving an exonerating fact may be imposed on a defendant if its existence is "peculiarly" within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient.'" (People v. Mower, supra, 28 Cal.4th at p. 477, 122 Cal.Rptr.2d 326, 49 P.3d 1067, quoting In re Andre R. (1984) 158 Cal.App.3d 336, 342, 204 Cal.Rptr. 723.) Applying this principle, we held in Mower that the defendant had the burden of producing evidence to show that marijuana was grown for personal medicinal purposes (see Health & Saf.Code, § 11362.5, subd. (d)), because that defense involved facts peculiarly within the defendant's personal *635 knowledge. (People v. Mower, supra, 28 Cal.4th at p. 477, 122 Cal.Rptr.2d 326, 49 P.3d 1067.)
This analysis applies here. A defendant's knowledge or lack of knowledge of the exempt status of the securities is a fact peculiarly within the defendant's personal knowledge. What steps, if any, the defendant took to determine whether the security is exempt often will also be a fact peculiarly within the defendant's knowledge. There is no unfairness or hardship in requiring the defendant to assume the burden of presenting evidence of the facts on which he or she relies.
Thus, we depart from the analysis in Simon, supra, 9 Cal.4th 493, 37 Cal. Rptr.2d 278, 886 P.2d 1271, in one respect. Simon held that knowledge of the falsity of a statement or the materiality of an omission (or criminal negligence) was an element of the crime of fraudulent sale of a security (§ 25401), and, consequently, that the trial court must so instruct. (See Simon, supra, 9 Cal.4th at p. 522, 37 Cal. Rptr.2d 278, 886 P.2d 1271.) We hold that lack of knowledge that a security is not exempt (or criminal negligence) is an affirmative defense, on which the trial court must instruct only if the defendant presents enough evidence to raise a reasonable doubt. Consequently, the prosecution will not have to prove that a defendant lacked a good faith belief in every one of the numerous grounds for exemption; it need only address the evidence the defense presented to raise a reasonable doubt as to the defendant's good faith.

IV. DEFENDANTS' RIGHT TO AN INSTRUCTION ON GUILTY KNOWLEDGE
It is well settled that a defendant has a right to have the trial court, on its own initiative, give a jury instruction on any affirmative defense for which the record contains substantial evidence (People v. Michaels (2002) 28 Cal.4th 486, 529, 122 Cal.Rptr.2d 285, 49 P.3d 1032)  evidence sufficient for a reasonable jury to find in favor of the defendant (Mathews v. United States (1988) 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54)  unless the defense is inconsistent with the defendant's theory of the case (People v. Breverman (1998) 19 Cal.4th 142, 157, 77 Cal.Rptr.2d 870, 960 P.2d 1094). In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence, but only whether "there was evidence which, if believed by the jury, was sufficient to raise a reasonable doubt." (People v. Jones (2003) 112 Cal.App.4th 341, 351, 4 Cal.Rptr.3d 916; see People v. Ramirez (1990) 50 Cal.3d 1158, 1180, 270 Cal.Rptr. 286, 791 P.2d 965; People v. Jeter (1964) 60 Cal.2d 671, 674, 36 Cal. Rptr. 323, 388 P.2d 355; People v. Simmons (1989) 213 Cal.App.3d 573, 579, 261 Cal.Rptr. 760, and cases there cited.) Thus, whether the trial court erred in not instructing that a defendant is not guilty of the crime of selling an unregistered security (§ 25110) unless the defendant knew the security was not exempt, or was criminally negligent, turns on whether the defendant offered substantial evidence that, if believed, by the jury, would raise a reasonable doubt as to the defendant's knowledge or criminal negligence.

A. Salas
Defendant Salas claimed that AJOI complied with the exemption requirements of section 25102, subdivision (f). He testified that AJOI had no more than 35 investors, and insisted that the contrary prosecution testimony was in error. He maintained that all investors had preexisting relationships with AJOI, and all could reasonably be assumed to have the capacity to protect their own interests.
*636 Although Salas presented this evidence to support his claim that the securities were actually exempt from registration, that evidence, if believed by the jury, would also show that Salas believed in good faith that the securities were exempt. We conclude that Salas presented sufficient evidence to be entitled to a jury instruction on the affirmative defense of absence of guilty knowledge.[8]
We next examine whether the instructional error was prejudicial as to Salas. He testified that he attempted to comply with the exemption requirements. In light of the prosecution's evidence, however, no reasonable jury would believe Salas's testimony. AJOI was essentially a one-man operation, and Salas was the man. As the president and secretary of the corporation, he had a duty to know the registration requirements and to know whether the security sales complied with those requirements. As the Court of Appeal concluded: "Given his self-proclaimed awareness of the exemption requirements, his total control over AJOI, his admitted personal supervision of records related to investors, and his involvement in conversations with investors, the evidence that Salas was criminally negligent in not knowing that there were more than 35 investors was overwhelming."
Moreover, in selling the securities, Salas made virtually no effort to determine whether the buyers had a preexisting relationship with AJOI officers or were capable of protecting their own interests. At trial he offered evidence that the investors were selected from a list of persons who had invested in other real estate projects, but that evidence did not establish any preexisting relationship between the investors and AJOI officers, nor did it show that the Salas could reasonably assume the investors had the capacity to protect their own interests. Only one or two of the investors who testified had a preexisting relationship with an AJOI officer; most did not. Some investors may have had the capacity to protect themselves  Salas points out that one had a degree in business administration and two others had investment advisors  but Salas made no such showing as to other investors. Section 25102, subdivision (f), requires that all purchasers either have a preexisting relationship with the seller or the capacity to protect themselves. It is clear beyond a reasonable doubt that Salas knew, or was criminally negligent in not knowing, that many AJOI investors did not meet the requirements of section 25102, subdivision (f), for exempting a security from registration.
We have not yet determined what test of prejudice applies to the failure to instruct on an affirmative defense. (See Simon, supra, 9 Cal.4th at p. 507, fn. 11, 37 Cal. Rptr.2d 278, 886 P.2d 1271.) But even assuming the more rigorous Chapman test applies (see Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 [state must prove error harmless beyond a reasonable doubt]), we conclude *637 that the trial court's failure to instruct on guilty knowledge was harmless as to Salas.[9]

B. Patrick
Defendant Patrick was a salesman without managerial authority. He testified that he thought the securities were exempt, but he did not explain why he thought so. He did not refer to any specific exemption nor point to any facts that might support a claimed exemption. Under these circumstances, it is not clear whether Patrick presented sufficient evidence to entitle him to a jury instruction on the affirmative defense of lack of guilty knowledge. We decline to decide, however, whether this record would have entitled Patrick to an instruction on his affirmative defense because that issue was not briefed or decided in the Court of Appeal, and has not been briefed or argued here. Therefore, as to Patrick, we remand the matter to the Court of Appeal to determine whether the trial court erred in failing to instruct on the absence of guilty knowledge as an affirmative defense, and whether that error, alone or in combination with other instructional errors (see fn. 8, ante) was prejudicial.

V. DISPOSITION
The judgment of the Court of Appeal is affirmed as to defendant Salas, but reversed as to defendant Patrick. The case is remanded to the Court of Appeal for further proceedings consistent with this opinion.
GEORGE, C.J., BAXTER, WERDEGAR, CHIN and MORENO, JJ., and BUTZ, J.[*], concur.
NOTES
[1] All statutory citations are to the Corporations Code unless otherwise indicated.
[2] The mental aspect of a violation of section 25110 could refer to whether a defendant knew the thing sold was a security, whether he knew it was unregistered, or whether he knew it was not exempt from registration. Only the third aspect is at issue here. Thus, we use the term "guilty knowledge," with reference to section 25110, to refer to a defendant's knowledge of facts showing that the security is not exempt, or his criminal negligence in failing to know of such facts.

Criminal negligence refers to "`a higher degree of negligence than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless.'" (People v. Penny (1955) 44 Cal.2d 861, 879, 285 P.2d 926; see People v. Valdez (2002) 27 Cal.4th 778, 783, 118 Cal.Rptr.2d 3, 42 P.3d 511; People v. Peabody (1975) 46 Cal.App.3d 43, 47, 119 Cal.Rptr. 780; CALJIC No. 3.36.)
[3] Section 25102, subdivision (f), exempts from registration:

"Any offer or sale of any security in a transaction (other than an offer or sale to a pension or profit-sharing trust of the issuer) that meets each of the following criteria:
"(1) Sales of the security are not made to more than 35 persons, including persons not in this state.
"(2) All purchasers either have a preexisting personal or business relationship with the offeror or any of its partners, officers, directors or controlling persons, or managers ..., or by reason of their business or financial experience or the business or financial experience of their professional advisers who are unaffiliated with and who are not compensated by the issuer ... could be reasonably assumed to have the capacity to protect their own interests in connection with the transaction."
[4] A restitution center is a penal institution in which prisoners are permitted to leave the facility during working hours so they can earn money to pay restitution. (Pen.Code, § 6220 et seq.) The Department of Corrections is now known as the Department of Corrections and Rehabilitation. (See Pen.Code, § 5000 et seq.)
[5] Section 25540, subdivision (a), also provides that "no person may be imprisoned for the violation of any rule or order if he or she proves that he or she had no knowledge of the rule or order." That provision, however, is inapplicable here because defendants were convicted of violating a statute, not a rule or order.
[6] The offenses at issue in Simon, supra, 9 Cal.4th 493, 37 Cal.Rptr.2d 278, 886 P.2d 1271, were committed between 1980 and 1985. At that time, the maximum punishment for a violation of section 25401 was a fine of $10,000 and a prison term of two, three, or five years. (Simon, at p. 507, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) The maximum fine is now $10 million. (§ 25540, subd. (b).)
[7] Language contrary to this opinion in People v. Corey, supra, 35 Cal.App.4th 717, 41 Cal. Rptr.2d 540, is disapproved.
[8] The trial court also committed two other instructional errors. First, it instructed that good faith is not a defense to the charge of selling an unregistered security, an instruction that is inconsistent with our analysis that absence of guilty knowledge is a defense. Second, it instructed that the exemption in section 25102, subdivision (f), applies only if the investors had "the business and financial experience" to make them "sophisticated investors." The statutory language refers to persons who, themselves or through financial advisors, have "the business and financial experience ... to have the capacity to protect their own interests." (§ 25102, subd. (f)(2).) The term "sophisticated investor" may connote a higher level of experience and expertise than would be required for an investor to protect his own interests.
[9] This reasoning and conclusion also apply to the other instructional errors noted in footnote 8, ante.
[*] Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.