Filed 12/19/13  P. v. Herrera CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>EDUARDO HERRERA et al.,<br><br>     Defendants and Appellants. | B241847<br><br>(Los Angeles County<br>Super. Ct. No. BA381936) |

Appeals from judgments of the Superior Court of Los Angeles County.  Lisa B. Lench, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant Edward Justin Herrera.

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant Eduardo Herrera.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Eduardo Herrera (Eduardo) and Edward Herrera (Edward), father and son, each appeal from their convictions for two counts of assault with a deadly weapon, arising from a series of drunken confrontations with a nightclub security guard. We affirm.

## Background

### The facts

At about 9:00 o'clock in the evening on March 18, 2011, Eduardo Herrera (Eduardo), his 21-year-old son Edward Herrera (Edward), his sister Jessica Herrera, and her adult son Robert Fregoso, went to the Three Clubs, a Los Angeles bar. That night, a Tuesday, was the club's regular night to present amateur stand-up comedy routines, and the club was relatively crowded, with about 120 patrons. Although Edward had intended to participate in the comedy presentations, the party had arrived too late.

At about 10:30 or 11:00 p.m. Eduardo and Edward were escorted out of the club by the club's security guard, Cornelius Fredrick, after Eduardo incessantly heckled the comedy-room participants, and Eduardo and Edward had cursed and shoved another patron in the bar. By then they had been served more than two drinks each, they were cursing and stumbling, and both seemed to Fredrick to be very intoxicated.

When Fredrick again went outside the club a few minutes later, he saw Eduardo walking away with a bar stool that he used at the club's front door. When Fredrick approached and said the police had been called, Eduardo dropped the stool and began cursing. For a few minutes Eduardo and Edward shouted curses and racial epithets at Fredrick, and traded curses with a group of club patrons who had by then come out a side door in response to the ruckus.

At that point, Edward ran to his car, retrieved a baseball bat from its trunk, and swung it at the gathered club patrons, who retreated into the club. As Fredrick retrieved the stool, another club employee observed Edward swinging a chain with a spiked ball on its end in a threatening way, while Fredrick held the stool in front of himself for protection. Either Eduardo or Edward threw a glass bottle, then they drove away.

Although the bartender had called 911, Fredrick told the operator that the police were not needed because no one had been injured and by then Eduardo and Edward had left.

Eduardo and Edward returned less than an hour later, stopping their car in the driveway to the club's parking lot, and cursing at patrons outside the club. Holding a chain and taking a bat from the car's trunk, Edward swung the bat toward a patron, causing the patron to flee. Eduardo took another bat from the car's trunk, and they both approached Fredrick. Both Eduardo and Edward struck Fredrick with their bats, and a witness reported to the police that Edward also struck Fredrick with the chain. After Fredrick pinned Eduardo to the ground, punching his face, according to Eduardo's sister Jessica, she sprayed Fredrick repeatedly with pepper spray, then shocked him about six times with a taser that she took from her purse.

The police arrived while Jessica was attacking Fredrick. Fredrick and Eduardo complied with the police command to stand against the wall; Jessica and Edward were stopped when they attempted to leave. From the gutter or sidewalk nearby, the police recovered a metal chain with spikes on the end, and a metal bat. From the appellants' car they recovered a wooden bat. A few days later, the club's bartender found an unknown taser on the back seat of her car. She said she often parked her car with the sunroof open while she was at work at the club.

**The case**

In an amended information filed October 25, 2011, Eduardo, Edward, and Jessica were charged with two counts of assault with a deadly weapon: in count 1, with a bat; and in count 2, with a chain. (Pen. Code, § 245, subd. (a).)[1] Counts 1 and 2 were both alleged to be serious felonies (§ 1192.7, subd. (c)), and both counts were alleged to be violent felonies for which prison custody time is to be served in state prison (§ 1170, subd. (h)(3)). In count 5, Eduardo was also charged with the crime of carrying a concealed dagger. (§ 12020, subd. (a)(4).) And it was alleged (pursuant to § 1170.12,

---

[1] All statutory references are to the Penal Code unless otherwise specified.

3

subds. (a)-(d) & § 667, subd. (b)), that Eduardo had sustained a prior conviction of a serious or violent felony, robbery. (§ 211.)[2]

A jury acquitted Eduardo of the count 5 charge, but deadlocked as to counts 1 and 2 against both Eduardo and Edward, resulting in a mistrial as to those counts. After a retrial on those counts before a second jury, Eduardo and Edward were found guilty on both counts.

Eduardo admitted the truth of the allegation of a prior strike conviction. The trial court denied his motion to reduce the felony convictions to misdemeanors. As to count 1, Eduardo was sentenced to the low term of two years, with five additional years for the prior felony conviction. However, the court struck the prior strike conviction, and stayed the count 2 sentence pursuant to section 654. Eduardo was ordered to pay a restitution fine, a criminal conviction assessment, and a court operations fee. A parole revocation fine was imposed and suspended, and he received appropriate custody credits.

The trial court also denied Edward's motion to reduce the felony convictions to misdemeanors, but suspended imposition of sentence and placed Edward on three years' probation, with a restitution fine, a criminal conviction assessment, a court operations fee, a suspended parole revocation fine, and appropriate custody credits.

Eduardo and Edward filed timely notices of appeal. Edward's appeal contends that the trial court erred by refusing to give the jury a "defense of others" instruction; that it abused its discretion by denying his motion to reduce the count 2 conviction to a misdemeanor; and that trial counsel rendered ineffective assistance with respect to these issues. Eduardo joins in Edward's contentions, and contends also that the trial court erred by instructing the jury on the use of witnesses' pretrial statements (a contention in which Edward joins).

---

[2] In addition to the count 1 and 2 charges, Jessica was also charged with felony use of pepper spray (§ 12403.7, subd. (g)), and assault with a taser (§ 244.5, subd. (b)). The record does not reflect the disposition of the charges against Jessica, and she is not a party to this appeal.

**Discussion**

**1. The Court Did Not Err In Instructing The Jury About The Use Of Witnesses' Pretrial Statements.**

The trial court instructed the jury in the terms of CALCRIM No. 318:

You have heard the evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements in two ways: 1. To evaluate whether the witness's testimony in court is believable; and 2. As evidence that the information in those earlier statements is true.

Eduardo and Edward contend that this instruction was applicable to pretrial statements made by Fredrick, the victim of their assaults, by Misty Swain, the Three Clubs' bartender, and by Anita Delbourgo, a witness to some of the events outside the club. The pretrial statements and testimony of each of these witnesses implicated Eduardo in the count 1 crime of assault with a bat, and in abetting Edward in the count 2 crime of assault with a chain.

In a transcript of a 911 call, admitted into evidence, the bartender had reported that the bar's security guard was being assaulted with "bats and chains." Officer Meneses testified that when he interviewed Delbourgo at the scene of the incident, she told him that she had seen a taser and a chain being used as weapons against the club's security guard (but she did not mention anyone with a bat). Officer Kim testified that Fredrick told him at the scene that Edward had hit him numerous times with both a bat and a chain, and that Fredrick had not mentioned Edward threatening customers with a bat. Officer Kim testified that he had not asked Fredrick at the scene whether he had hit Eduardo, but he was impeached on cross-examination with his prior testimony that he had asked Fredrick that question, to which Fredrick had responded that he had not.[3]

Eduardo and Edward contend that by telling the jury that it could use the witnesses' pretrial statements as evidence that the information in the statements was true,

---

[3] Appellants do not contend that the admission of any of this evidence was error.

5

the instruction in CALCRIM No. 318 effectively endorsed truth of the pretrial statements and the consistent trial testimony. According to appellants, the jury could only have understood this instruction to raise an unsupportable presumption that the witnesses' statements were true merely because they had been made before trial. But contrary to the instruction, they contend, whether the statements were made before trial did not render the witnesses' statements to be more likely to be true than false. They contend that the instruction therefore relieved the prosecution of its burden of proving its case beyond a reasonable doubt, violating the appellants' due process rights to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 278 [prosecution bears burden of proving all elements of offense beyond a reasonable doubt].)[4]

We see no reasonable possibility that the jury understood from the instruction in CALCRIM No. 318 that the truth or believability of the witnesses' pretrial statements was to be presumed by virtue of having been made before the trial. By instructing that "[i]f you decide that the witness made those [pretrial] statements," the jury "may" use the statements in evaluating both the statements and the witness's testimony, the instruction left it wholly within the jury's discretion to decide not just whether the statements had been made, but also whether their impact should be to strengthen or to weaken the witness's credibility and the testimony's veracity.

The cited examples reflect pretrial statements that are for the most part consistent with the witnesses' trial testimony, but reflect some inconsistencies as well. It may well be (as the appellants contend) that as to pretrial statements by these witnesses that were consistent with their trial testimony, the jury might have found their testimony to be more credible than if the pretrial statements had been inconsistent with their trial testimony. That would be a natural result of the jury's rational evaluation of the evidence, however,

_____

[4] Although the appellants failed to preserve this issue by objecting to or seeking modification of the instruction in the trial court, we review the argument on the merits because error to which no objection was interposed may nevertheless warrant review, "if the substantial rights of the defendant were affected thereby." (§ 1259; *People v. Guerra* (2006) 37 Cal.4th 1067, 1138.)

6

and would not indicate its reliance on an unfounded presumption favoring the believability of the statements or the testimony. It is not the fact that one statement preceded the other that is relevant to the credibility determination, but the consistency or inconsistency of the statements with one another. (Evid. Code, §§ 1235, 1236.)

We reject appellants' contentions that CALCRIM No. 318 is ambiguous and misleading, and that the court in *People v. Hudson* (2009) 175 Cal.App.4th 1025, 1028 misapprehended its meaning in reaching this same conclusion. We find no error and no prejudice in the trial court's use of CALCRIM No. 318 to instruct the jury with respect to the evaluation of pretrial statements.

## 2. The Court Did Not Err By Refusing Edward's Proffered Instructions On Defense Of Others.

Edward's trial counsel requested that the jury be instructed on the right to use force as a defense of others. The theory was that Edward could be found not guilty of the count 2 charge of assault with a chain if the jury were to conclude that he had assaulted Fredrick with the chain in reasonable defense of his father, who was being held down and hit by Fredrick when the police arrived.[5]

Finding that the theory was not supported by evidence, the trial court denied the request. Edward contends that the refusal to instruct on this theory was error of constitutional proportions, and that his counsel's failure to persuade the trial court of the theory's factual support constituted ineffective assistance of counsel.

---

[5] CALCRIM No. 3470 provides in pertinent part that a defendant acts in lawful defense of another and is not guilty of assault, if (1) he reasonably believed that someone else was in imminent danger of suffering great bodily injury; (2) he reasonably believed that the immediate use of force was necessary to defend against that danger; and (3) he used no more force than was reasonably necessary to defend against that danger. CALCRIM No. 3471 instructs that an aggressor or fighter has a right to self-defense only if he has tried to stop fighting, he has communicated that to his opponent, and he has given his opponent an opportunity to stop. CALCRIM No. 3472 instructs that there is no right of self-defense for one who provoked a fight as an excuse to use force. CALCRIM No. 3474 instructs that the right to use force in self-defense or defense of another continues only until the danger no longer exists or reasonably appears to exist.

7

A defendant is entitled to instructions on all defenses for which the record contains substantial evidence—evidence that, if believed, would be sufficient for a jury to find a reasonable doubt as to defendant's guilt. (*People v. Michaels* (2002) 28 Cal.4th 486, 529; *People v. Salas* (2006) 37 Cal.4th 967, 982-983.) The question whether the trial court erred in refusing to instruct the jury on the defense-of-another theory therefore turns on whether the record contains substantial evidence that, if believed by the jury, would raise a reasonable doubt as to whether Edward assaulted Fredrick with the chain in a reasonable effort to defend his father from Fredrick's blows.

Upon review, we find the court was correct in refusing to instruct the jury on the elements of that defense. The evidence is not sufficient to support a determination that Edward assaulted Fredrick with the chain in a reasonable effort to defend his father.

The evidence concerning Edward's assault on Fredrick with the chain is conflicting. Jessica, Edward's aunt, testified that Edward typically wore the chain attached to his belt and wallet, and that he was wearing it the night they went to the Three Clubs bar. Fredrick saw the chain in Edward's hand after the bar-stool incident, and another club employee saw Edward swinging the chain toward Fredrick in a threatening and offensive manner, not defensively. Fredrick testified that he had been threatened with the chain, and both Fredrick and another witness told the police the night of the incident that Edward hit Fredrick with the chain. The police later found the chain that Edward had worn to the club that night—described as a metal chain with spikes on the end—on the sidewalk next to the bat.

The only evidence of aggressive behavior by Fredrick was that, while being hit with bats by Eduardo and Edward, he grabbed Eduardo in a bear hug, held him to the ground, perhaps hitting him in the face, until the police arrived.[6] There was no evidence

---

[6] Jessica testified that Fredrick punched Eduardo continuously in the face, 20 or more times, while holding him down. Fredrick testified that he hit Eduardo once or twice while holding him down, but was impeached by his earlier denial that he had hit Eduardo at all, and by photos of Eduardo's face after the incident. But the testimony was without conflict that Fredrick had grabbed Eduardo and pulled him to the ground only after being hit multiple times by Eduardo's and Edward's bats.

that Fredrick had instigated the violence; Eduardo and Edward were the only ones who were armed, and the only evidence was that they—not Fredrick—had instigated the use of force, both initially and upon their return after having left the club. No evidence at all indicated an intention on the part of either Eduardo or Edward to end the fight at that point. The evidence therefore could not support a determination that Edward had assaulted Fredrick with the chain in an attempt to protect his father from Fredrick's blows. Even the testimony of Jessica, Edward's aunt, was inconsistent with that theory. She testified that she came out of the club to find Fredrick holding Eduardo and hitting him in the face, but that Edward was doing nothing to defend Eduardo.

Nor is there any evidence from which the jury could have found that such an attempt would have been reasonable, in light of the uncontradicted evidence that Eduardo and Edward had been at all times the aggressors. In short, the record is completely devoid of even the slightest evidence to support a defense theory that Edward acted either in self-defense or in defense of Eduardo in using his chain against Fredrick, as the trial court correctly ruled.

### 3. The Trial Court Did Not Abuse Its Discretion By Refusing To Reduce The Defendants' Convictions To Misdemeanors.

In the trial court the defendants each sought reduction of their count 1 and count 2 convictions for assault with a deadly weapon, originally charged as felonies under the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12) to misdemeanors. They ask this court to find that the trial court abused its discretion in refusing those requests with respect to the count 2 offense of assault with the chain. We find no abuse of discretion.

Assault with a deadly weapon, the crime for which the defendants were convicted, is referred to as a "wobbler" because it is punishable, in the trial court's discretion, by imprisonment in either state prison or county jail. (§ 245, subd. (a)(1); *People v. Park* (2013) 56 Cal.4th 782, 789-790.) "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison . . . or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes . . . [¶] . . . [¶] (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting

probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor." (§ 17, subd. (b)(3).)

The factors that guide the trial court's discretion in considering whether to reduce a conviction to a misdemeanor are summarized in *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978. There, the court held that while the applicability of the Three Strikes law to the defendant's circumstances is relevant, it "is not singularly dispositive" of the issue. (*Id*. at p. 973.) Trial courts retain discretion to determine whether a wobbler should be reduced to a misdemeanor at the time of sentencing. (*Id*. at pp. 974-975.) The relevant factors include, generally, "'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.'" (*Id.* at p. 978.)

Counsel argued the significance of these (and other) factors, and the trial court addressed these factors in denying the defendants' motions to reduce their convictions to misdemeanors. With respect to Eduardo the court adopted the prosecutor's characterization of his conduct as more accurately an attack on Fredrick than a typical bar fight, with the use of deadly weapons and exhibiting repeated confrontations, returning for more after having left the scene, with Eduardo influencing his impressionable son to engage in criminal conduct. And as to Edward, the court recognized that he was young at the time of the offense (21 years old), that he had no record of violence, that his only prior conviction was for a misdemeanor for which he had been placed on probation, and that the two strikes resulting from his conviction in this case would leave him with "no wiggle room for his future. None. Zero." But it denied Edward's motion to reduce his convictions to misdemeanors, concluding (as it has for Eduardo) that the conduct shown by the evidence is not "misdemeanor conduct." The court went on to explain that these same factors—Edward's youth, his lack of a significant criminal record, and the adverse consequences of the imposition of two strikes resulting from his conviction in this case—

10

influenced its decision to place Edward on probation rather than committing him to any substantial incarceration.[7]

The law gives the trial court broad discretion in determining whether to reduce a defendant's conviction from a felony to a misdemeanor. "By making [the charged offense] a wobbler, the Legislature has determined that either a misdemeanor or a felony punishment may be appropriate in the discretion of the sentencing court. The Legislature has also granted broad authority under the express terms of section 17(b) to make that determination. And, the Legislature chose not to compromise the exercise of the court's discretion when it enacted the three strikes law. [Citation.]" (*People v. Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at pp. 980-981.) The burden of demonstrating an abuse of discretion—that the sentencing decision was arbitrary or irrational—is on the party challenging the sentence imposed by the court. (*Id.* at p. 977.)

The appellants have failed to meet that burden. Edward argues that it is "simply wrong" that he must "spend the rest of his life under the shadow of a potential third-strike sentence because of his drunken acts" on the night of his crime, and that "[t]he public interest is not served by such an outcome." But it was within the trial court's discretion to determine otherwise on the record before it, with respect to both the defendants. This court will not say gainsay its determination. That's what discretion is all about.

Nothing in the record indicates that in reaching its sentencing determinations the court strayed in any way beyond the factors that are appropriate, or that its resulting

---

[7] In this court Edward argues that multiple factors indicate a reduction of his felony convictions to misdemeanors would be appropriate, including that the evidence concerning his use of the chain was so conflicting as to be "troubling," that the chain was worn by Edward as a fashion accessory rather than a weapon that Fredrick suffered no serious injury from the chain, that Edward's conduct was mitigated by the fact that he was "extremely inebriated," that he was young and his brain was "not fully mature," that he was acting under his father's guidance and influence, that his criminal record was trivial, that he had been employed and had no known gang connections, that the jury might have erroneously convicted him of two assaults for the same conduct, that he might have used the chain in his father's defense, that he had acted respectfully throughout the trial proceedings, that he might have been offered a beneficial pretrial plea agreement, and that this case will result in two strikes against him under the Three Strikes law.

11

sentences were unjustified by the record. We find no abuse of discretion in the trial court's denial of the defendants' requests that it reduce their felony convictions to misdemeanors.

## Disposition

The judgments are affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.

JOHNSON, J.