Filed 9/29/15  P. v. Smallen CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060839 |
| v. | (Super.Ct.No. SWF1200448) |
| KURT ALEXANDER SMALLEN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Angel M. Bermudez, Judge.  Affirmed in part; reversed in part with directions.

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Kurt Alexander Smallen appeals his conviction for willful, deliberate and premeditated attempted murder and assault with a deadly weapon. His principal contention is that his attempted murder conviction must be reversed because, despite evidence to support it, the trial court failed to give an instruction on unconsciousness. We conclude that even if we assume that there was substantial evidence in support of such an instruction, the court had no sua sponte duty to give the instruction because it is clear from the record that the defense chose not to rely on the defense of unconsciousness.

<u>PROCEDURAL HISTORY</u>

A jury convicted defendant of willful, deliberate and premeditated attempted murder and assault with a deadly weapon. (Pen. Code, §§ 664, 187, subd. (a), 245, subd. (a)(1).)[1] The jury also found it true that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)) in the commission of the attempted murder and that he personally inflicted great bodily injury (§ 12022.7, subd. (a)) in the commission of both offenses. The victim of both crimes was identified as Jane Doe.

The court sentenced defendant to a term of seven years to life[2] in prison for the attempted murder, and imposed and stayed the assault sentence pursuant to section 654,

---

[1] All further statutory citations refer to the Penal Code unless another code is specified.

[2] As we discuss below, the only authorized sentence for attempted murder is life in prison with the possibility of parole. (§ 664.)

2

subdivision (a). The court imposed consecutive terms of one year and three years, respectively, for the weapon use and great bodily injury enhancements.

Defendant filed a timely notice of appeal.

FACTS

On February 2, 2012, defendant, then 19 years old, stabbed and slashed Jane Doe multiple times with a pocket knife. Doe had been walking and jogging on a hiking trail in the neighborhood where both she and defendant lived. Doe did not know defendant and had never seen him before. Defendant approached Doe from the opposite direction, then turned and walked behind her, at first at a distance of 30 to 50 yards. He passed her on a hill, then fell behind and walked behind her again for some distance. Doe heard someone running up behind her and then felt a knife stab her left shoulder and then her back. She turned and looked defendant in the face. Defendant said nothing but smiled and continued striking at Doe with the knife as she attempted to block the blows with her arms. Doe said that defendant appeared to be "whacked out" or "crazy." Doe saw William Dennick riding toward them on a bicycle. She fell to the ground to attract Dennick's attention, and defendant turned and ran. Dennick, who was then studying to become an emergency medical technician, tended to Doe and called 911.

Ric Van Der Linden, who lived in a house adjacent to the trail, heard screaming and saw defendant running away as Dennick rode up on his bicycle. Defendant took off his shirt as he ran. Van Der Linden got on his bicycle and pursued defendant. Defendant, who had been sprinting when Van Der Linden first saw him, was slowing down by the time Van Der Linden caught up with him. Van Der Linden yelled something like, "Hey,

3

what's going on here?"  Defendant responded, "What?"  His tone was "kind of" innocent, and he appeared startled.  Defendant said that someone had attacked a woman and that he was going to get help.  Defendant continued to jog, but Van Der Linden eventually cut him off with his bicycle and told him to stop.  Another person on a bicycle and someone in a truck helped detain defendant.

After he was detained by Van Der Linden and the others, defendant sat motionless on the curb.  He didn't say much.  He was bloody and looked like he had been in a fight.  When sheriff's deputies arrived, defendant appeared dazed.  They handcuffed him and walked him to the patrol car without incident.  Defendant had a folding knife in the pocket of his shorts.

<u>LEGAL ANALYSIS</u>

1.

DEFENDANT WAS NOT PREJUDICED BY THE COURT'S FAILURE TO INSTRUCT THE JURY ON UNCONSCIOUSNESS

A person who "committed the act charged without being conscious thereof" is legally incapable of committing a crime, as long as the unconsciousness was not voluntarily induced.  (§ 26, par. Four; see § 29.4, subd. (a); *People v. Rogers* (2006) 39 Cal.4th 826, 887.)  Legal unconsciousness "does not mean that the actor lies still and unresponsive.  Instead, a person is deemed 'unconscious' if he or she committed the act without being conscious thereof."  (*People v. Haley* (2004) 34 Cal.4th 283, 313.)  Defendant contends that there was substantial evidence that he was unconscious during

4

the attack on Jane Doe and that the trial court had the duty to instruct on the defense of unconsciousness despite his failure to request the instruction.

Defendant presented the following evidence: Defendant had been a star athlete in Temecula from grade school through high school. He was passionate about baseball, and he was a model student, well-behaved and not prone to lose his temper. He began to experience difficulties during his first year in college. He had a baseball scholarship, but his playing deteriorated and his grades, which were excellent in his first semester, declined. At the end of his third semester, he dropped out and returned home. Shortly before the attack on Jane Doe, defendant had an argument with his mother, who was upset that he appeared not to be attending classes at a local community college, as they had agreed he would.

The day after his arrest, defendant was examined by a doctor, who diagnosed him as paranoid schizophrenic.[3]

A clinical psychologist retained by the defense, Dr. Kania, interviewed defendant twice in April 2013, for a total of over six hours. He reviewed the videotape of defendant's interview with detectives, reviewed police reports and medical records from the jail, and administered the Minnesota Multiphasic Personality Inventory (MMPI), a standard psychological assessment tool. Dr. Kania noted that during defendant's interview with detectives shortly after his arrest, defendant was emotionally flat ("[E]verything was kind of at a monotone") and that he appeared to be struggling to

---

[3] Schizophrenia typically first manifests in people in their late teens through early 20's.

understand what he had done.  Dr. Kania was aware that defendant had been diagnosed as paranoid schizophrenic the day after the attack, but he did not reach a formal diagnosis himself.  He concluded instead that defendant had suffered a brief psychotic episode.

Dr. Kania questioned defendant at length about his personal history and his family.  He also questioned him closely about the events leading to the charged offenses. He found defendant's responses to the MMPI to be consistent with what defendant told him, and found no evidence that defendant was malingering, or seeking to gain an advantage by claiming a mental defect.  Dr. Kania's assessment of defendant was that he has trouble understanding his emotions and being aware of them, and that in stressful periods, defendant might decompensate or regress.  He said that people with defendant's profile are likely to experience periods when they may "lose track of what's going on, become briefly psychotic and have problems with impulse control during those periods when you just kind of can't hold it together for whatever reason, usually some form of stress or some loss of support of some kind."  Dr. Kania testified that defendant's flat affect during and immediately after the incident and the fact that he sat motionless and did not speak were consistent with a person who was experiencing a psychotic episode. Defendant found it very stressful to be living at home again; he felt that his parents were making unreasonable demands.  He also appeared to be having an identity crisis. Dr. Kania opined that the circumstances "were the type that could have resulted in a psychotic episode during which a person may have become disoriented and impulsive and could have struck out aggressively without full awareness or control of his behavior." He also stated that in a psychotic state such as he believed defendant experienced, "a

6

person who was normally able to control their behavior might not be able to control their behavior." He stated that defendant "gave some indication of what's known as a dissociative reaction. So he wasn't aware of what he was doing at the time."

As with any other defense, a trial court must instruct on unconsciousness on its own motion if it appears the defendant is relying on the defense, or if there is substantial evidence supporting the defense and the defense is not inconsistent with the defendant's theory of the case. (*People v. Rogers*, *supra*, 39 Cal.4th at p. 887; see generally *People v. Breverman* (1998) 19 Cal.4th 142, 157.) We will assume, without deciding, that Dr. Kania's testimony does constitute substantial evidence that defendant was unconscious when he attacked Jane Doe. However, the record shows that the defense did not rely on unconsciousness and that doing so would have negated its strategy.

Unconsciousness is a complete defense, not only to murder or attempted murder, but to any offense. (*People v. Rogers*, *supra*, 39 Cal.4th at p. 887.) The defense chose, as a matter of tactics, to concede that defendant committed the lesser offense of assault with a deadly weapon, thus giving the jury the option of acquitting him of attempted murder while still finding him guilty of a serious felony. In furtherance of this strategy, defense counsel argued that Dr. Kania's testimony and other evidence compelled the conclusion that defendant did not form the intent to kill and that he did not premeditate the attack on Jane Doe. Although, as defendant states, defense counsel argued that in his psychotic state, defendant was not aware of what he was doing, the point she was making throughout her argument was that he did not form the intent to kill and did not premeditate or deliberate. She did not argue that he was unconscious. And, counsel

7

argued that the mental state defense she relied on does not apply to assault, because assault is a general intent crime. She told the jury that if it found that defendant did not form the intent to kill, "what we're left with is assault with a deadly weapon, great bodily injury, personal use of a knife." She asked the jury to find him guilty of that offense. Accordingly, because the defense did not rely on unconsciousness, the trial court did not have a duty to instruct on that defense. (*People v. Rogers*, *supra*, 39 Cal.4th at p. 887.)

A trial court also does not have a sua sponte duty to instruct on a defense which is inconsistent with the defense theory of the case. (*People v. Salas* (2006) 37 Cal.4th 967, 982.) On the contrary, the defendant has the right to determine the defense or defenses he wishes to rely on. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 157.) If the court believes that the evidence supports a defense not proffered by the defendant, the court should ascertain from the defendant whether he or she wants instructions on the alternative theory. (*Ibid*.; see also *People v. Salas*, at p. 982.) As we have discussed above, the defense strategy was to persuade the jury that because of his mental state, defendant did not premeditate or form the intent to kill. The defense sought to persuade the jury to convict him of assault with a deadly weapon rather than attempted murder. An instruction on unconsciousness would have negated that strategy. Because unconsciousness is a complete defense to all offenses (*People v. Rogers*, *supra*, 39 Cal.4th at p. 887), an instruction would necessarily have informed the jury that if it found that defendant was unconscious at the time of the attack on Jane Doe, it must find him not

8

guilty of both charged offenses.[4]  Accordingly, if the court had inquired whether the defense desired an instruction on unconsciousness, the answer certainly would have been "no."  For that reason, any failure by the trial court to discharge its duty to inquire whether defendant wanted an instruction on unconsciousness was harmless under any standard.  (See *People v. Salas*, at p. 984 [California Supreme Court has not yet determined what standard of prejudice applies to failure to give instruction on affirmative defense requested by the defense].)

Moreover, even if the trial court had erred in omitting the instruction on unconsciousness, the error would have been harmless even under *Chapman v. California* (1967) 386 U.S. 18, the more stringent of the two standards which apply to instructional errors.  (*People v. Salas*, *supra*, 37 Cal.4th at p. 984; *People v. Simon* (1995) 9 Cal.4th 493, 506-507 & fn. 11.)[5]  Under *Chapman*, the state must prove that the error was harmless beyond a reasonable doubt.  (*Chapman*, at p. 24.)  Here, the jury was instructed that it could consider defendant's mental disorder in determining whether at the time of the incident defendant acted with the intent to kill and with premeditation and deliberation, both of which are elements of premeditated attempted murder.  By finding defendant guilty of premeditated attempted murder, the jury necessarily rejected any

---

[4] If a trial court gives an instruction, it must provide a complete and accurate statement of the law.  (*People v. Ramirez* (2015) 233 Cal.App.4th 940, 949.)

[5] Structural error, which is reversible per se, applies only to instructional errors that "'categorically "'vitiat[e] *all* the jury's findings.'"' [Citation.]" (*People v. Mil* (2012) 53 Cal.4th 400, 412.)  Omission of the unconsciousness instruction in this case, even if it had been required, would not rise to that level of error.

assertion that defendant's mental disorder prevented him from forming the necessary mental state and intent. Accordingly, we are convinced beyond a reasonable doubt that the jury would not have found defendant unconscious if the instruction had been given.

2.

SENTENCING ERRORS

The parties agree that defendant is entitled to one additional day of credit for actual time served before his conviction. We concur.

Defendant contends that the trial court expressed its intention to impose the minimum restitution and probation revocation fines, which at the time of his offenses were $240. Instead, however, the court imposed $300 fines.

At sentencing, the court stated as follows with respect to those fines: "There is a restitution fine in the case. There's a conviction fee in the case, as well. [¶] This offense occurred, Madam Clerk, back in 2012, so we have to make sure that we're using the 2012 numbers. . . . [¶] There's a parole revocation fine. . . . That's $300." The sentencing minutes reflect that the restitution fine and the parole revocation fine were both $300. (The abstract of judgment reflects neither fine.)

Defendant is correct that in 2012 the minimum restitution and parole revocation fines for felony convictions were $240. (§§ 1202.4, subd. (b)(1), 1202.44.) And, the amount imposed as a parole revocation fine pursuant to section 1202.44 must be the same as that imposed pursuant to section 1202.4. (§ 1202.44.) However, the trial court has the discretion to impose such fines in any amount from the minimum up to $10,000, commensurate with the seriousness of the offense. (§ 1202.4, subd. (b)(1).) Here,

10

contrary to defendant's contention, it is not clear that the court intended to impose the minimum fine available in 2012, although that is certainly one plausible interpretation of the court's comments. Because the court did not actually state the amount it intended to impose as a restitution fine but apparently left it up to the clerk to decide what the "2012 numbers" were, we will remand the matter with directions to the trial court to exercise its discretion to determine and impose restitution and parole revocation fines in any amount authorized by the pertinent statutes.[6]

Finally, as we noted in footnote 2, *ante*, the court purported to impose a sentence of seven years to life on count 1. This is erroneous as a matter of law. The statutory term for willful, deliberate and premeditated attempted murder is life with the possibility of parole. (§ 664.) A person sentenced to that term is not eligible for parole until he or she has served seven years. (§ 3046.) However, although that parole ineligibility period is deemed to be a minimum term for purposes of second strike offender sentencing under the three strikes law (*People v. Jefferson* (1999) 21 Cal.4th 86, 92-97; §§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), it is not otherwise a minimum term. (*People v. Felix* (2000) 22 Cal.4th 651, 654, 657-659.) Accordingly, the correct sentence for each count of attempted murder is life with the possibility of parole, not seven years to life. We will

---

[6] In light of our resolution of the issues pertaining to credits and fines, defendant's contentions that his trial attorney provided ineffective assistance at sentencing are moot.

remand the cause with directions to issue a corrected abstract of judgment and corrected sentencing minutes.[7]

DISPOSITION

The judgment is reversed to the extent that it imposes a term of seven years to life on count 1. The superior court is directed to determine and impose restitution and parole revocation fines in any amount authorized by sections 1202.4, subdivision (b)(1) and 1202.44. The court shall thereafter issue a corrected abstract of judgment and corrected sentencing minutes reflecting imposition of a sentence of life with the possibility of parole on count 1, imposition of restitution and parole revocation fines, and presentence credit for 772 days in actual time served. The superior court is directed to provide a copy of the corrected abstract of judgment and the corrected sentencing minutes to the parties and to the Department of Corrections and Rehabilitation.

The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER<br>Acting P. J.

We concur:

KING
J.

MILLER
J.

---

[7] The indeterminate abstract of judgment form includes, at item 5, a box to indicate that the sentence is "Life with the possibility of parole on counts _____."

12