Filed 2/2/21  P. v. Dunbar CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EDDIE LAMAR DUNBAR,<br><br>        Defendant and Appellant. | A158815<br><br>(Alameda County<br>Super. Ct. No. 17-CR-033186) |

Defendant Eddie Lamar Dunbar appeals a judgment convicting him of assault with a semiautomatic firearm and unlawful possession of a firearm by a felon and sentencing him to 33 years in prison. On appeal, he contends the trial court failed to sua sponte instruct the jury that the exercise of self-defense does not require a defendant to retreat and that the trial court abused its discretion in denying defense counsel's motion to withdraw. We find no error and shall affirm the judgment.

**Background**

Defendant was charged with attempted murder (Pen. Code,[1] §§ 187, subd. (a), 664), assault with a semiautomatic firearm (§ 245, subd. (b)), and possession of a firearm by a felon (§ 29800, subd. (a)(1)). The information alleged further that defendant personally used a firearm and inflicted great

---

[1] All statutory references are to the Penal Code.

1

bodily injury (§§ 12022.53, 12022.7, 12022.5) and that defendant previously suffered a serious felony conviction (§§ 667, subds. (a)(1), (e)(1) and 1170.12, subd. (c)(1)) and served two separate terms of imprisonment (§ 667.5, subd. (b)).

The following evidence was presented at trial:

On the evening of August 15, 2017, the victim, heavily intoxicated, walked from his uncle's apartment to a nearby convenience store. As he was returning to the apartment, he was shot once in the leg.  The victim could not recall being shot or identify his assailant.

Detectives were able to identify defendant as the shooter from video footage taken on security cameras at the location of the shooting. The video recordings show the victim walking by defendant in a vehicle as the victim entered the convenience store and later his being shot as he was walking on the sidewalk. It also shows defendant's vehicle driving in the roadway next to the victim and the shots being fired from the vehicle.

At trial defendant admitted that he shot the victim but claimed that he was acting in self-defense. Defendant testified that as a result of his exposure to violence growing up, he suffers from post-traumatic stress disorder, fears for his life, and carries a handgun for protection. Just before the shooting, defendant and his cousin were sitting in his vehicle outside of the store when the victim walked by and said, "Bitch-ass nigga, I'll kill you." This threat caused defendant to fear for his life. He did not know the victim and worried that he might be armed. Defendant watched the victim walk "aggressively" into the store and interact with another person and saw him rip down a sign as he left the store.

With his cousin driving and defendant in the passenger seat, they followed the victim in their car because defendant wanted to know why the

2

victim had threatened him and how he could resolve any problem between them. When the car approached, defendant asked the victim what his problem was. The victim responded, "Nigga, yeah I am," which defendant found confusing. Defendant claimed that the victim approached the vehicle in a threatening manner and reached towards his waistband. Believing the victim was reaching for a gun, defendant pulled out his gun, fired two shots toward the ground to scare the victim into backing away, and his cousin immediately drove away.

On cross-examination, defendant admitted that he could have chosen to "let it go" and to not follow the victim after he left the store and that once the victim walked away he posed no continuing threat to defendant or his family.

The jury acquitted defendant of the attempted murder charge, but found him guilty of assault with a firearm and being a felon in possession of a firearm. The jury found not true the allegation that defendant inflicted great bodily injury but found true the allegation that defendant personally used a firearm. Defendant admitted the prior serious felony and one prior-prison allegation.[2]

The trial court sentenced defendant to state prison for a total term of 33 years.[3] Defendant timely filed a notice of appeal.

---

[2] The second prior prison allegation was dismissed after sentencing.

[3] The trial court imposed the upper term of nine years for assault with a firearm, doubled pursuant to section 1170.12, subdivision (c)(1), plus ten years for the firearm enhancement and five years for the prior serious felony conviction (§ 667, subd. (a)(1)). The court also imposed a concurrent two-year term for unlawful possession of a firearm.

**Discussion**

1. *The jury was properly instructed on self-defense.*

The jury was instructed pursuant to CALCRIM No. 3470 regarding defendant's right to self-defense.[4] The court omitted the following optional language found in brackets in CALCRIM No. 3470: "A defendant is not required to retreat. He or she is entitled to stand his or her ground and defend himself or herself and, if reasonably necessary, to pursue an assailant until the danger of [death or bodily injury] has passed. This is so even if safety could have been achieved by retreating." Defendant acknowledges that his trial counsel did not request the jury be instructed with the optional

---

[4] CALCRIM No. 3470, as given, reads: "Self-defense is a defense to attempted murder, assault with a semi-automatic firearm, and the lesser-included offense of assault with a firearm. The defendant is not guilty of these crimes if he used force against the other person in lawful self-defense. The defendant acted in lawful self-defense if: [¶] 1. The defendant reasonably believed that he was in imminent danger of suffering great bodily injury; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger. [¶] Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was imminent danger of bodily injury to himself. The defendant's belief must have been reasonable and he must have acted because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense. [¶] When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant did not act in self- defense. If the People have not met this burden, you must find the defendant not guilty of attempted murder, assault with a semi-automatic firearm or assault with a firearm."

4

language. He contends that the court had a sua sponte obligation to give the optional instruction or alternatively, that his attorney rendered ineffective assistance by failing to request it.

A trial court has a duty to instruct sua sponte on particular defenses " 'only if it appears the defendant is relying on such a defense or if substantial evidence supports such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Barton* (1995) 12 Cal.4th 186, 195.) The trial court's failure to give self-defense instructions will be upheld on appeal if the record contains no substantial evidence to support the instructions. (*In re Christian S.* (1994) 7 Cal.4th 768, 783.) In this context, substantial evidence means evidence of a defense which, if believed, would be sufficient for a reasonable jury to find a reasonable doubt as to the defendant's guilt. (*People v. Salas* (2006) 37 Cal.4th 967, 982–983.)

The optional part of CALCRIM No. 3470 stating that a defendant is not required to retreat informs a jury "that in the exercise of the right of self-defense a person under assault or threat of attack need not retreat." (*People v. Pruett* (1997) 57 Cal.App.4th 77, 89.) The "no duty to retreat" instruction only applies when a defendant is under assault or threat of attack and exercising his right of self-defense. (1 Witkin, Cal. Criminal Law (4th ed. 2020) Defenses, § 77.)

Defendant argues that the evidence "established [defendant] sought to resolve the apparent problem with [the victim] by seeking him out rather than retreating from the scene. From this the jury could have improperly concluded that [defendant] was guilty of assault with a semiautomatic firearm because he did not retreat when he had the opportunity to do so." The victim's verbal threat, however, allegedly made as he walked by defendant's

5

parked vehicle and entered the 7-Eleven store, did not give rise to a right to self-defense, as there was no threat of harm, much less imminent harm, by the victim. Defendant's decision to follow the victim after he exited the store was not the exercise of his right to self-defense. The court did not have a duty to instruct sua sponte that defendant was not required to retreat, nor was counsel's performance deficient because he failed to request an instruction to which defendant was not entitled. (*Strickland v. Washington* (1984) 466 U.S. 668.)

2. *The court did not err in denying trial counsel's motion to withdraw.*

At the start of trial, defendant sought the appointment of new counsel and the court conducted an in-camera hearing in accordance with *People v. Marsden* (1970) 2 Cal.3d 118. After the motion for substitute counsel was denied, defendant's attorney moved to withdraw. He advised the court that his relationship with defendant had deteriorated to the point that he could not "offer him effective assistance of counsel." The attorney stated that defendant was convinced that he, counsel, is "out to . . . sabotage his defense." He explained that defendant wanted to testify that he acted in self-defense, but counsel did not believe defendant should testify because defendant had indicated that he would not disclose who else was in the car that night. Counsel was concerned that if defendant is ordered to answer questions and refuses, his testimony would be struck by the court and he would be deprived of a self-defense instruction. Counsel also noted that a defense of self-defense is belied by the video recordings of the incident and that he had suggested that defendant take advantage of the plea bargain offered by the prosecution, rather than face a life sentence.

In conversation with the court, defendant confirmed that he wanted counsel to argue that he acted in self-defense and claimed that defense

counsel would not present the requested defense. The court explained to defendant that if he wanted to present a self-defense case, defendant could testify to the facts underlying such a defense. The court reiterated that defendant would have to answer all questions while testifying and defendant agreed that he would do so.

In denying counsel's motion, the court stated, "I think Mr. Dunbar has presented himself as a particularly difficult client. He's indicated self-defense is what he wants to pursue. He's indicated he's going to testify. He's going to answer questions that are put to him by the prosecutor. We'll talk about [the] record we have to make if and when he does testify based on the concerns that you have." With respect to defendant's remaining complaints, the court either offered an explanation to defendant or concluded that they did not present a sufficient basis to justify replacing counsel on the eve of trial.[5]

Defendant contends the trial court abused its discretion in denying his attorney's motion to withdraw. Defendant has an absolute right to substitute appointed counsel if he can show that his constitutional right to counsel would otherwise be substantially impaired. (*People v. Nakahara* (2003) 30 Cal.4th 705, 718.) Substantial impairment of the right to counsel occurs whenever the record shows " ' " 'defendant and counsel [are] embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' " ' " (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085, citing *People v. Memro* (1995) 11 Cal.4th 786, 857.) Disagreements regarding trial strategy, however, do not by themselves constitute an irreconcilable conflict between attorney and client. (*People v. Cole* (2004) 33 Cal.4th 1158, 1192.) To show an

---

[5] For example, counsel had also noted that defendant has accused him of colluding with the prosecutor and the court explained to defendant that counsel talking about a jury questionnaire with the district attorney is not colluding.

irreconcilable conflict a defendant "cannot simply refuse to cooperate with his appointed attorney and thereby compel the court to remove that attorney." (*People v. Michaels* (2002) 28 Cal.4th 486, 523.) A defendant "may not effectively veto an appointment of counsel by claiming a lack of trust in, or inability to get along with, the appointed attorney. [Citation.] Moreover, the trial court need not conclude that an irreconcilable conflict exists if the defendant has not tried to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness." (*People v. Smith* (2003) 30 Cal.4th 581, 606.) Finally, the mere fact that a defendant received unwelcome legal advice from his counsel, such as strong encouragement to enter a plea bargain, is not an adequate basis for substitution of counsel. (*People v. Clark* (2011) 52 Cal.4th 856, 914.)

"The determination [of] whether to grant or deny an attorney's motion to withdraw as counsel of record lies within the sound discretion of the trial court, having in mind whether such withdrawal might work an injustice in the handling of the case." (*Lempert v. Superior Court* (2003) 112 Cal.App.4th 1161, 1173.) "Denial 'is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel.' " (*People v. Barnett, supra*, 17 Cal.4th at p. 1085.)

Here, defendant's argument on appeal is based solely on counsel's representation that there was an irreconcilable conflict between him and defendant. He argues, "[Counsel] advised the court he could not represent [defendant] effectively because of his relationship had so deteriorated that he could not render the effective assistance to which [defendant] was constitutionally entitled. [Defendant] distrusted the attorney, accused him of colluding with the prosecutor, and threatened to sue him. As is readily

8

apparent, [counsel] was in the best position to know if he could render effective representation. Accordingly, the court abused its discretion when it denied the motion to withdraw."

"Although counsel's evaluation of the attorney-client relationship is important [citations], it is not binding in the face of the court's own observations and appraisal." (*People v. Clark, supra*, 52 Cal.4th at p. 918; see also *People v. Smith*, *supra*, 30 Cal.4th at p. 606 [defense counsel's agreement with the defendant's claim of a breakdown in communication did not compel the court to grant new counsel]; *United States v. Smith* (4th Cir. 2011) 640 F.3d 580, 598 [While that court expects "counsel to be forthright with the court (and not timid) when, in counsel's professional judgment, and as an officer of the court, counsel's ability to render . . . the assistance commanded by the Sixth Amendment exceeds counsel's capacity under the circumstances," counsel's opinion is not binding where the record does not support counsel's assertion regarding a breakdown in communication.].)

Here, the conflict between counsel and defendant clearly stemmed from defendant's desire to present a claim of self-defense and counsel's reasonable concerns regarding defendant testifying. This tactical disagreement did not necessarily demonstrate an irreconcilable conflict. To the contrary, the trial court largely resolved the dispute in conversation with defendant and as a result, defendant testified and presented his desired defense. Defendant's argument that he did not receive effective assistance of counsel in the presentation of his defense was rejected above. Accordingly, the trial court did not abuse its discretion in denying counsel's motion to withdraw.

## Disposition

The judgment is affirmed.

POLLAK, P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.